**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 90-0095-WS** |
| | ) | |
| **TIMOTHY ORLANDO RAINEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant's filing (by and through counsel) styled Motion for Writ of *Audita Querela* (doc. 157).

After a jury trial held in March 1995, defendant, Timothy Orlando Rainey, was convicted of two counts of conspiracy to possess with intent to distribute controlled substances (cocaine and marijuana), in violation of 21 U.S.C. § 846.  On June 21, 1995, the late Judge Vollmer held a sentencing hearing at which he sentenced Rainey to a term of imprisonment of 300 months, to be served consecutively to an undischarged state sentence.

At the time of his federal conviction, Rainey was already serving a 15-year prison sentence imposed by the Circuit Court of Madison County, Alabama, in November 1988 for trafficking in cocaine.  According to Rainey, state prison officials provided him with "a new sentence computation sheet" in early 1992 reflecting a release date of April 1996 for that 15-year sentence.  (Rainey Aff. (doc. 157, Exh. C), at 1.)[1]  Rainey maintains that federal marshals picked him up from a state correctional institution in March 1995 for his federal trial and returned him there in June 1995 after his federal sentencing.  (*Id.*)  Rainey maintains that, when he got back to state prison, he was informed by state officials "that there had been a mistake made" with respect to his release date from state prison and that he was actually going to have to serve a larger

---

[1]    Rainey does not allege that he or his attorney ever furnished this "new sentence computation sheet" to Judge Vollmer in connection with the federal sentencing proceeding.

portion of the 15-year sentence than had been indicated in his 1992 "sentence computation sheet." (*Id.*)[2]

Now, 17 years after his federal sentencing hearing and 17 years after he became aware of the recomputation of his release date by Alabama authorities, Rainey requests that he be resentenced by this Court to account for what he calls a "mistake of fact" at his original federal sentencing hearing. Rainey theorizes that the Alabama correctional officials' miscalculation of his anticipated related date "impacted the Court's consideration of the sentence to be imposed in this case" because "[t]he undischarged term that was considered by the Judge was factually incorrect." (Doc. 157, at 3.) On that basis, defendant professes to be entitled to a new federal sentencing hearing pursuant to a writ of *audita querela*. His theory for relief is that, had Judge Vollmer known the true amount of time remaining on the state-court sentence, he might have exercised his discretion to run the federal sentence concurrently with the state sentence, instead of consecutively.

The writ of *audita querela* is of extremely limited utility to criminal defendants. In that regard, the law is clear that "a federal prisoner may not use the writ of *audita querela* where postconviction relief is available through § 2255 or *coram nobis* motions." *United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005). It may be invoked (if at all) only "where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy." *United States v. Richter*, 510 F.3d 103, 104 (2nd Cir. 2007) (citations omitted); *see also United States v. Crowell*, 374 F.3d 790, 795 (9th Cir. 2004) (similar); *United States v. Johnson*, 962 F.2d 579, 582 (7th Cir. 1992) (*audita querela* is available only "when a defense or discharge arises subsequent to entry of the final judgment," and "[t]he defense or discharge must be a legal defect in the conviction, or in the sentence which taints the conviction"). Again, to be cognizable under *audita querela*, the petitioner's objection must be legal, not equitable, in nature. *See, e.g., United States v. Simms*, 866 F. Supp.2d 94, 98 (D. Conn. 2011) (noting that many courts have "insisted that *audita querela* is not meant to provide equitable relief," and emphasizing that the writ "must

---

[2] In fact, Rainey says that he actually served the entire 15-year state sentence on that 1988 cocaine-trafficking conviction. He indicates that he was released from state custody in March 2006, at which time he commenced serving his 300-month federal sentence.

not be used as a freewheeling source of equitable relief"); *United States v. Baussan*, 2011 WL 3715082, *2 (M.D. Fla. Aug. 24, 2011) (similar).

There are a number of glaring threshold defects in Rainey's request for writ of *audita querela*. For starters, he does not identify any legal defect in his conviction, or a legal defect in his sentence that tainted his conviction. He points to no case authority from any jurisdiction in which the writ of *audita querela* has ever been deemed to apply in circumstances analogous to those presented here. And it is not at all clear that the sentencing challenge he raises (*i.e.*, that his federal sentence should have been imposed concurrently rather than consecutively to his state sentence) would not be cognizable under a traditional § 2255 or § 2241 petition, which would itself render the writ unavailable. *See generally United States v. Frank*, 2011 WL 493107, *1 (11th Cir. Feb. 14, 2011) (defendant "is not eligible for relief under a writ of *audita querela* because as a federal prisoner attacking the legality of his sentence, [he] was eligible to move for § 2255 relief"); *Bedolla-Izazaga v. United States*, 2011 WL 135747, *1 (10th Cir. Jan. 18, 2011) (where defendant's "claims challenge the validity of his sentence," § 2255 motion rather than petition for writ of *audita querela* "is the proper avenue to pursue such claims").[3] And Rainey offers no explanation whatsoever for why he waited 17 years before first raising this issue. If defendant truly felt that Judge Vollmer had been laboring under a mistake of fact at the sentencing, why did Rainey not notify the Court promptly upon returning to state prison and receiving his new state release date computation? Had he done so, Rainey could have learned right away whether Judge Vollmer deemed this development to be material in any way to the sentence he had imposed.

Even setting aside the foregoing concerns, the most fundamental problem with Rainey's request is that there is no reason to believe the change in his state release date would have made any difference in his federal sentence. In written filings prior to the federal sentencing hearing, Rainey's counsel asked Judge Vollmer to make the federal sentence concurrent with the 1988 state sentence. On the record during the hearing, Judge Vollmer unambiguously and decisively

---

[3]     On that score, defendant insists that "the result sought to be obtained is quite different" between a petition for writ of *audita querela* and a § 2255 motion. (Doc. 158, at 7.) However, by his own admission, the relief he seeks in this case is that this Court "vacate the sentence imposed and hold a new sentencing hearing" that takes into account an additional fact. (*Id.* at 10.) This is exactly the sort of relief that a successful § 2255 movant would achieve.

declined, as follows:  "Objection 82, the Court does not, the Court will deny that objection.  ***The Court will not have this run concurrently***.  The Court is not bound to have it run concurrently under the law, as the Court understands it.  You will again have the objection as you choose on that.  You may raise that issue on appeal."  (Doc. 157, Exh. E, at 559 (emphasis added).)  Judge Vollmer did <u>not</u> indicate that his decision had anything to do with Rainey's anticipated release date from the state sentence, that Judge Vollmer's understanding of that release date matched Rainey's, or that the length of time the state prison authorities would require Rainey to serve on that 15-year sentence (or the calculation of his good time credits by state authorities) made any difference to him in his sentencing determination.

Simply put, there is no evidence before the Court that Judge Vollmer was operating under a mistake of fact concerning Rainey's undischarged state sentence, or that his decision to run the two sentences consecutively was driven in any way by his understanding of how much good time Rainey would be granted by state corrections officials.  Rather, the record reflects that Rainey was serving a 15-year state-court sentence for trafficking in cocaine, and that Judge Vollmer (with full knowledge of that fact) made a clear, informed decision to impose a 300-month federal sentence on Rainey and to run such sentence consecutively to the state sentence.  There was no mistake of fact, even assuming that a mistake of fact at sentencing is a cognizable basis for invoking the writ of *audita querela* 17 years after the federal sentencing hearing.[4]

For all of the foregoing reasons, the Motion for Writ of *Audita Querela* (doc. 157) is **denied**.

---

[4]         If the writ were available in these circumstances, the result would be an explosion of resentencing hearings.  Under Rainey's theory, whenever a federal defendant serving an undischarged state sentence learned of a post-sentencing loss of good time on a state sentence, he would be able to secure a new sentencing hearing in federal court to see if that changed release date might affect his federal sentence.  This would be so, even where the sentencing judge had spoken clearly and decisively at the original sentencing hearing that the federal sentence was to run consecutively, not concurrently.  The result, of course, would be that a defendant could abuse the writ in seeking to persuade a federal court (even many years after the fact) to reconsider its decision to run the sentences consecutively, or (as in this case) to ask a new judge to substitute his opinion on the consecutive/concurrent issue for that of the original sentencing judge long after that original judge was gone.  Nothing in the case authorities cited by Rainey or reviewed by this Court suggests that any court has ever perceived the writ of *audita querela* to have such pervasive, expansive application.

DONE and ORDERED this 11th day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE